# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA SANCHEZ, | No. 2:18-CV-0596-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 6 and 7), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross motions for summary judgment. (ECF Nos. 17 and 27).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on June 11, 2014. See CAR 24.[1] In the application, plaintiff claims disability began on October 9, 2013. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 22, 2016, before Administrative Law Judge (ALJ) Daniel Myers. In a November 3, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine, and obesity status post gastric bypass surgery;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can only sit for 2 hours at a time before needing to stand or walk; she can only stand or walk for 30 minutes at a time before needing to sit again;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work; and

5. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant has acquired work skills from her past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy.

See id. at 15-22.

After the Appeals Council declined review on January 16, 2018, this appeal followed.

///
///
///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on July 2, 2018 (ECF No. 9).

**III. DISCUSSION**

In her opening brief, plaintiff argues: (1) the ALJ failed to property credit the opinions of treating physicians, Drs. Wang[2], Yoon, and Champlin, as well as the opinion of qualified medical evaluator, Dr. Murphy; (2) the ALJ failed to articulate sufficient reasons for rejecting her statements and testimony as not credible; and (3) the ALJ failed to articulate sufficient reasons for rejecting third-party lay witness evidence.

**A.      Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

---

[2]      Plaintiff refers to Dr. Wang as "Dr. Yang."

F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

6

conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### 1. The ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinion evidence to determine plaintiff's residual functional capacity. See CAR 38-41. The ALJ discussed the opinions of the following physicians: Dr. Murphy, a qualified medical evaluator; Dr. Champlin, a treating source; Dr. Yoon, a treating source; Dr. Wang, a treating source; and state agency non-examining physicians. See id. The ALJ summarized these opinions as follows:

> Qualified medical evaluator Dr. Robert Murphy opined in September and October, and affirmed in November 2013 that the claimant can return to her former work performing secretarial duties which had minimal physical demands, and job coaching (Exhibit 4F/2, 6, 13, 20; 15F/12).
>
> Treating source Dr. John Champlin opined in August 2010 the claimant could return to her usual and customary job. . . . (Exhibit 4F/40; 15F/11). Dr. Champlin opined in April 2013 . . . the claimant can do somewhat sedentary exertional work only, up as needed for pain control, maximum of six hours a day/five days a week as of May 2013 (Exhibit 1F/42).
>
> The State Agency non-examining physicians opined in September 2014 and February 2015 the claimant can lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for six hours of an eight hour day, sit for six hours of an eight hour day, can occasionally balance, bend, climb, crouch, crawl kneel, and stoop, but cannot climb ladders. She must avoid jobs requiring 20/20 vision (Exhibit 1A and 3A).
>
> In July 2014 treating source Dr. Yoon opined that due to lower back pain and left shoulder pain, the claimant can sit for 1-2 hours for six hours of an eight hour day, stand for 30 minutes for 3-4 hours of an eight hour day, and must be able to have a 10 minute period of walking about every 90 minutes. She must be able to shift positions at will. She does not need a cane to walk. He opined she can frequently lift less than ten pounds, occasionally lift ten pounds and rarely lift 20 pounds. She can rarely do postural actions and never climb ladders. (Exhibit 9F).
>
> In August 2016 treating source Dr. Jane Wang opined the claimant can sit for 30 minutes at a time for six hours of an eight hour day, stand for 20 minutes at a time for 4 hours of an eight hour day, and must be able to have a 5 minute period of walking about every 30 minutes. She must be able to shift positions at will and take unscheduled breaks for 5 minutes every 90 minutes. She does not need a cane to walk. She opined she can

/ / /

/ / /

7

|   |   |
|---|---|
| 1 | occasionally lift ten pounds and rarely lift 20 pounds. She can occasionally crouch/squat, rarely stoop and twist and never climb |
| 2 | ladders/stairs. (Exhibit 19F). |
| 3 | CAR 38-39. |
| 4 | The ALJ gave the state agency doctors' opinion little weight. <u>See id.</u> at 39. This |
| 5 | finding is not at issue in this case. The ALJ also assigned little weight to the opinions of Drs. |
| 6 | Murphy and Champlin. <u>See id.</u> The ALJ stated: |
| 7 | . . .[O]pinions of Drs. Murphy and Champlin that the claimant can return to her past relevant work, and the opinion of Dr. Champlin that the |
| 8 | claimant can work a maximum of six hours a day, five days a week, are accorded little weight. By regulation, opinions that the claimant is or is |
| 9 | not "disabled" or "unable to work [full time]" are not entitled to any special significant, even when offered by a treating physician. (20 C.F.R. |
| 10 | §§ 404.1527(e)(3), 416.927(e)(3), and Social Security Ruling 96-5p). The determination of disability is an issue reserved to the Commissioner which |
| 11 | it is the Commissioner's statutory responsibility to perform. |
| 12 | CAR 39. |
| 13 | The ALJ gave the opinions of Drs. Yoon and Wang "substantial weight" in part |
| 14 | and "little weight" in part. <u>See id.</u> at 39-40. The ALJ stated: |
| 15 | Substantial weight is accorded these opinions, which support each other in finding that, despite the symptoms and limitations of the claimant's |
| 16 | impairments, there is still significant capacity to engage in working tasks. . . . |
| 17 | * * * |
| 18 | |
| 19 | Lastly, little weight is accorded that part of the opinions of Drs. Yoon and Wang that the claimant must be able to have 5 or 10 minutes periods of walking about every 30 or 90 minutes, must be able to shift positions at |
| 20 | will, take unscheduled breaks for 5 minutes every 90 minutes, can rarely lift 20 pounds and rarely do postural activities. These more extreme |
| 21 | limitations in functionality are not consistent with the limited objective findings in the medical record, the mild to moderate degree of |
| 22 | degenerative changes of the back with no cord impingement and no significant stenosis and neuroforaminal narrowing, within normal EMG, |
| 23 | and the repeated findings and statements on the good effect of treatment modalities to relieve her symptoms of chronic back pain. They also do not |
| 24 | take into account the good response to surgical intervention to reduce her morbid obesity, her own reported progressive improvement as she drops |
| 25 | weight, nor the wide range of activities of daily living the claimant is able to perform, from household chores, to grandchild care, do regular water |
| 26 | aerobics and walking. They are also inconsistent with the findings of qualified medical evaluator Dr. Murphy and former treating source Dr. |
| 27 | Champlin who opined no such restrictions on the claimant's functioning. |
| 28 | <u>Id.</u> |

2. <u>Plaintiff's Contentions</u>

Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting the opinions of treating physicians, Drs. Wang and Yoon. According to plaintiff:

> Drs. Yang and Dr. Yoon were Ms. Sanchez's treating physicians during the relevant time period. Among other things, it was Dr. Yang's 2016 opinion that in a competitive work environment Ms. Sanchez could sit 30 minutes at one time before needing to get up; stand 20 minutes at one time before needing to get up; and could sit at least 6 hours and stand/walk about 3-4 hours in an 8-hour workday. AR 2798-2799. It was her further opinion, that Ms. Sanchez would need to walk around every 30 minutes for 5 minutes each time, and she would need a job that permitted her to shift positions at will from sitting, standing or walking. She would also need to take unscheduled breaks every 90 minutes for about 5minutes sitting quietly before returning to work. AR 2799. It was Dr. Yang's opinion that Ms. Sanchez should never lift/carry 50 pounds, rarely lift/carry 20 pounds, and only occasionally lift/carry 10 pounds or less. AR 2799. Further, Ms. Sanchez could rarely twist, stoop (bend), occasionally crouch/squat, and never climb stairs or ladders. AR 200. It was Dr. Yang's opinion that Ms. Sanchez's impairments would likely produce "good days" and "bad days" and that, on average, she would be absent from work more than 4 days per month as a result of her impairments or treatment. AR 2800. In her opinion, Ms. Sanchez was not capable of performing full time work (8 hours per day, 40 hours per week) on a regular, sustainable, and reliable basis in the national economy. AR 2800. *See also*, Summary of Relevant Opinion Evidence.
>
> Similarly, in 2014, it was Dr. Yoon's opinion that, among other things, Ms. Sanchez could sit 30 minutes at one time before needing to get up; sit at least 6 hours; and stand/walk about 3-4 hours in an 8-hour workday. Ms. Sanchez would need to walk around every 90 minutes for 10 minutes each time in an 8-hour workday, and needed a job that permitted her to shift positions at will from sitting, standing or walking. It was Dr. Yoon's opinion she could never lift/carry 50 pounds, rarely lift/carry 20 pounds, occasionally lift/carry 10 pounds, and frequently lift/carry less than 10 pounds. AR 740. Ms. Sanchez could rarely twist, stoop (bend), crouch/squat, and climb stairs and never climb ladders. Further, Dr. Yoon noted that she had significant limitations with reaching, handling or fingering with her left arm and limited use of the left arm to 20% during an 8-hour workday. AR 741. It was his opinion that her impairments would likely produce "good days" and "bad days" and that, on the average, she would be absent from work about two days per month as a result of her impairments or treatment. AR 741.

Plaintiff contends more weight should have been given to these doctors' opinions for the following reasons:

> First, Drs. Yoon and Yang had a significant treatment history with Ms. Sanchez. Consequently, they were able to assess Ms. Sanchez's impairments and symptoms over a considerable period of time. Their opinions were informed based on their knowledge of Ms. Sanchez's medical history, her treatment, and response to treatment. It was not an opinion based

9

on a short, one time, medical examination without benefit of medical records nor an opinion based solely upon a paper review of the record.

Second, Ms. Sanchez had gastric bypass surgery on November 24, 2015. The ALJ conceded that she was "morbidly obese" for much of the period at issue. AR 37. Indeed, the last entry for her weight was December 2015 and her BMI of 30.92 still placed her in the obese category. AR 1488. Dr. Yoon's July 2014, opinion was offered five months before she had gastric bypass surgery but Dr. Yang's August 2016, RFC assessment was completed nine months after the gastric by pass surgery. Dr. Yang's assessed limitations were certainly informed by the gastric bypass surgery and represented Dr. Yang's opinion as to Ms. Sanchez's work related abilities as of July 2016. It was absurd for the ALJ to assume Dr. Yang's RFC was not informed by Ms. Sanchez's weight loss as of the date she completed the RFC assessment in July 2016. Dr. Yang's RFC assessment reflected her opinion of what Ms. Sanchez was capable of doing as of July 2016.

Third, Ms. Sanchez's did not engage in a "wide range" of daily activities. She was able to attend church "most Sundays" and "see" her grand kids. AR 246. With respect to her grand kids, she explained that "at times I watch them play outside." AR 243. She visited her grandkids but there was no indication that she babysat or was in charge of their care. In fact, when asked if she took care of anyone else, she crossed out "take care of" and explained that she only visited with them. AR 243. With respect to housework, she reported "I do a little at a time light house work." AR 244. She did "a little daily." *Id.* She testified:

> and then I'll come back. And when I do dishes and when I cook at home I have, it's about this big, about this tall, I don't know how tall that is, it's black and I have a lot of pain in my groin area so I prop my foot up and I lean on the counter and I cook, I do my dishes. And that's how I [am] with my kitchen.

AR 71.

Nor did she engage in "water aerobics." She went to Eater Seals for hot water therapy. AR 249. She described this activity as:

> I just get in that hot water and I have days where I go in there where I just take a noodle and I go to the deep end of the pool and I just hang, I just stay in that pool and just hang there and I also do exercises in the pool because I want to maintain my mobility and I want to maintain my range of motion and I don't want to be dependent on a wheelchair . . .

AR 74.

Moreover, she reported in 2014, that when she went for longer walks, she had to use her cane. AR 248. In addition, she testified that she had joined a gym and gone twice to use the treadmill but after was in a lot of pain. AR 76-77. She described her social activities as talking on the phone and talking to people at church. AR 246. Ms. Sanchez's level of activity was consistent with the medical evidence and did not indicate an ability to engage in full-time work on a sustained basis. . . .

Fourth, the objective medical evidence thoroughly documented the degenerative changes in her spine. For example, On January 25, 2010, MRI of the lumbar spine documented the following: 1) marked degree of loss of lumbar lordosis although the lumbar alignment was preserved, and 2) there were the following 4 levels of disc bulges: L2-L3 intervertebral disc showed a 5 mm bulge; L3-L4 intervertebral disc showed a 3.2 mm bulge; L4-L5 intervertebral disc showed a 3.5 mm bulge; and L5-S1 intervertebral disc showed a 5.7 mm bulge and marked height loss. AR 415. A subsequent October 17, 2013, MRI of the lumbar spine documented further deterioration: L3-L4 with 4-5 mm broad-based disc bulge, facet and ligamentum flavum hypertrophy resulting in canal stenosis and bilateral neural foraminal narrowing, right greater than left; L4-L5 with 2-3 mm broad-based disc bulge, facet and ligamentum flavum hypertrophy resulting in bilateral neural foraminal narrowing, right greater than left with canal stenosis also present at this level; L5-S1 with 4-5 mm broad-based disc bulge, facet and ligamentum flavum hypertrophy resulting in moderate to severe bilateral neural foraminal narrowing, right greater than left with canal stenosis also present at this level: and S1-2 with 2-3 mm broad-based disc bulge, facet arthrosis resulting in severe bilateral neural foraminal narrowing, left greater than right, with no canal stenosis present as this level. AR 428. Contrary to the ALJ's assertion that there was "no significant. . .neuroforaminal narrowing," this MRI documented moderate to severe bilateral neural foraminal narrowing at L5-S1 and severe bilateral neural foraminal narrowing at S1-2.

Fifth, the record documented that Ms. Sanchez had variable results with respect to the treatment of her pain. . . . [discussion of longitudinal treatment record between August 2013 and May 2016 omitted].

\* \* \*

In addition, the ALJ failed to even reference Dr. Yoon's 2014 opinion that Ms. Sanchez would miss 2 days of work per month and Dr. Yang's opinion that Ms. Sanchez would miss more than four days of work per month due to her impairments and treatment. AR 741, 2800. The ALJ failed to even reference this important limitation much less provide specific and legitimate reasons for rejecting this limitation. *See*, *Travizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). The VE specifically testified that a person who missed even two days of work per month was not employable. Consequently, the ALJ's failure to adequately address this important aspect of the treating opinion evidence was not harmless. AR88.

Plaintiff also contends the ALJ failed to provide adequate reasons for rejecting the opinions of Dr. Champlin, a treating source, and Dr. Murphy, a qualified medical examiner, as to plaintiff's inability to perform full-time work. Plaintiff asserts:

. . .[C]ontrary to the ALJ's assertion, like Drs. Yang and Yoon, Drs. Champlin and Murphy assessed numerous work related functional limitations and determined she could not perform full-time work. For example, Dr. Champlin's 2013 opinion was that Ms. Sanchez could do no lifting "greater than fifteen pounds, no repetitive bending, twisting, stooping. . . . He opined the claimant can do somewhat sedentary exertional work only, up as needed for pain control, maximum of six hours a day/five days a week as of May 2013. It was also Dr. Murphy's opinion that she was able to continue to safely work at her usual and customary job, now permanently modified [As clarified

11

by Dr. Champlin.] AR 604. In other words, Drs. Champlin and Murphy found that Ms. Sanchez was only capable of performing less than full time work. Consequently, Ms. Sanchez was not capable of substantial gainful employment as defined by the Social Security disability laws. However, the ALJ accorded Dr. Champlin and Dr. Murphy's opinions regarding her ability to perform less than full-time work "little weight" because "the determination of disability is an issue reserved to the Commissioner which is the Commissioner's statutory responsibility to perform." AR 39. However, finding that Ms. Sanchez could only engage in 6 hours of work per day was a valid assessment of her ability to sustain ongoing work at a competitive level. Moreover, even with respect to issues "reserved to the Commissioner," SSR 96-5p specifically cautions that:

> adjudicators must always carefully consider medical source opinions about *any* issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

*See*, SSR 96-5p.

The ALJ could not simply reject their opinion that Ms. Sanchez was only capable of performing 6 hours of competitive work per day.

3. Decision

    i. Drs. Wang and Yoon

Plaintiff asserts five claims of error in the ALJ's analysis of the opinions expressed by Drs. Wang and Yoon. According to plaintiff, the ALJ's conclusion the doctors' assessments "do not take into account" plaintiff's positive response following gastric by-pass surgery is speculative. Plaintiff also asserts her daily activities do not support the ALJ's analysis of the doctors' opinions because they are not as wide-ranging as presumed by the ALJ. Next, plaintiff argues the ALJ's finding regarding the objective medical evidence is belied by the record. Plaintiff further contends the record shows variable results from treatment, contrary to the ALJ's finding. Finally, plaintiff argues the ALJ erred by ignoring Dr. Yoon's opinion plaintiff would miss two days of work per month and Dr. Yang's opinion plaintiff would miss more than four days of work per month due to her impairments and treatment.

/ / /

/ / /

For the reasons discussed below, the matter will be remanded for further consideration of the opinions offered by Drs. Wang and Yoon.[3]

Results of Gastric By-Pass Surgery – This argument is well-taken to the extent Dr. Wang's opinion was offered after plaintiff's by-pass surgery and the ALJ cited to evidence to support the conclusion Dr. Wang failed to take this procedure into account when she formulated her opinions.

Daily Activities – This argument is well-taken because the ALJ does not explain how the cited daily activities demonstrate any particular inconsistency with the doctors' opinions.

Objective Medical Evidence – This argument is unpersuasive because, while plaintiff has outlined objective medical evidence establishing the existence of various impairments, the record contains scant objective evidence of the limiting effects of such impairments. Thus, the ALJ properly cited the objective medical evidence of record in evaluating the doctors' opinions.

Response to Treatment – This argument is unpersuasive because the record reflects, as discussed in more detail below with respect to the ALJ's credibility evaluation, plaintiff's course of treatment was extremely conservative.

Attendance – Plaintiff's final argument is well-taken in that the ALJ did not discuss attendance or account for limitations in this regard in the hearing decision.

ii.  Drs. Murphy and Champlin

Plaintiff contends the ALJ erred in rejecting the opinions expressed by Drs. Murphy and Champlin regarding plaintiff's ability to sustain full-time work (i.e, an eight-hour workday). Both doctors opined that plaintiff is capable of somewhat less than full-time employment. As the ALJ noted, Dr. Murphy opined plaintiff could return to her past relevant

---

[3] It appears from the hearing decision the ALJ was extremely selective in determining which portions of the doctors' opinions were accepted and which were not. The court observes that many of the reasons articulated by the ALJ as cutting against certain aspects of the opinions would logically apply equally to all the opinions, but were not so applied. For example, while extensive daily activities would tend to undermine all of the limitations opined by Drs. Wang and Yoon, according to the ALJ they only undermined some limitations. The same can be said for inconsistency with the objective medical evidence. On remand, the ALJ should remain mindful of the Commissioner's duty to evaluate the evidence in light of the record as a whole.

part-time work, and Dr. Champlin opined plaintiff could not work more than six hours per day on a sustained basis. <u>See</u> CAR 39. The ALJ rejected these opinions, finding that they expressed a determination of disability reserved to the Commissioner. <u>See id.</u>

The court finds the ALJ's analysis is flawed and, therefore, agrees with plaintiff the ALJ erred. While is well-settled that the ultimate issue of disability is reserved to the Commissioner, that is not to say the ALJ may side-step significant work-related limitations which would appear to be disabling. In this regard, the court notes the ALJ's insertion of the bracketed phrase "full time" in his citation to the relevant regulations and rulings cited by the ALJ, 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3), and Social Security Ruling (SSR) 96-5p. Indeed, this phrase does not appear in the cited authorities. Whether a claimant can sustain work on a full-time basis is relevant to plaintiff's residual functional capacity to sustain competitive remunerative employment on a full-time basis. The fact that the result of this inquiry may well be dispositive of the ultimate issue of disability does not render it immune from consideration by the ALJ no more than a credibility assessment may also be dispositive, for example in certain chronic pain cases.

The matter will be remanded to allow the ALJ to either adopt the limitation to working no more than six hours per day or provide sufficient reasons for rejecting it.

**B.    <u>Credibility Assessment</u>**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. <u>See</u> <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. <u>See id.</u> Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." <u>See id.</u>; see also <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007),

14

and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

          1.     The ALJ's Findings

At Step 4, the ALJ evaluated the credibility of plaintiff's subjective statements and testimony. See CAR 32-39. The ALJ summarized plaintiff's statements and testimony as follows:

> The claimant alleges her combination of impairments cause weakness, fatigue, and chronic pain, limiting activities of daily living, social functioning, and the capacity to concentrate, remember, and accomplish tasks. She testified and reported to a motor vehicle accident in 2009 leaving her with back pain with left leg radiculopathy as well as left shoulder pain that is 7-8/10 without pain management treatment. She does not take pain medications as they make her sleepy, feel foggy, disconnected, and prevent her from driving. She relies instead on acupuncture twice weekly and warm water therapy five times weekly, two hours at a time. Due to her impairments she lifts only 5 pounds, has difficulties squatting, bending, standing, walking, sitting, kneeling, and stair climbing, moves slowly and uses a cane sometimes for longer walks, like going to the mall, or walking downtown (Exhibit 3E, 4E, 7E, 10F, and hearing testimony).

CAR 33.

///

The ALJ found plaintiff's statements and testimony are not credible. See id. at 34. The ALJ cited the following reasons:

- First, findings upon physical exams and in medical imagery do not correspond to the level of pain and limitation alleged. CAR 34.

- Second, citing daily activities, her conditions are controlled and improved with the treatment she receives. Id. at 35.

- Third, the allegations are challenged by the opinions of record from the examining and evaluating physicians. Id. at 38.

2. Plaintiff's Contentions

Plaintiff argues:

Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but then concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms" were not entirely credible for the reasons explained in the decision. AR 34. Apparently, the ALJ found Ms. Sanchez less than credible because: findings upon physical exams and in medical imagery do not correspond to the level of pain and limitation alleged; her conditions are controlled and improved with the treatment she receives; and the allegations are challenged by the opinions of record from the examining and evaluating physicians. AR 34-40.

First, contrary to the ALJ's assertion and as fully set forth in Argument I above, substantial evidence of record was consistent with the pain and functional limitations reported by Ms. Sanchez. In addition, objective radiological evidence documented substantial degeneration in her lumbar spine. Moreover, as previously briefed, an October 17, 2013, MRI of the lumbar spine documented: L3-L4 with 4-5 mm broad-based disc bulge, facet and ligamentum flavum hypertrophy resulting in canal stenosis and bilateral neural foraminal narrowing, right greater than left; L4-L5 with 2-3 mm broad-based disc bulge, facet and ligamentum flavum hypertrophy resulting in bilateral neural foraminal narrowing, right greater than left with canal stenosis also present at this level; L5-S1 with 4-5 mm broad-based disc bulge, facet and ligamentum flavum hypertrophy resulting in moderate to severe bilateral neural foraminal narrowing, right greater than left with canal stenosis also present at this level: and S1-2 with 2-3 mm broad-based disc bulge, facet arthrosis resulting in severe bilateral neural foraminal narrowing, left greater than right. AR 428. *See,* Argument I above. Indeed, when Dr. Murphy reviewed the MRI, he submitted a supplemental report and observed that the MRI indicated "that aggressive conservative management, including a possible trial of epidural steroid injections at the appropriate levels and on the proper side,[was] indicated in an effort to not only diminish her symptoms but minimize progression of her disease." He went on to state that " a vigorous conservative program, as outlined in my earlier report and above, takes on even more importance based upon that MRI scan if she is, in fact, to avoid a massive four-level surgical decompression, with or without arthrodesis." AR 585-587. The medical record as a whole, including the radiological evidence, thoroughly corroborates and supports the pain and functional limitations she reported. *See*, Argument I above.

17

Second, as previously briefed, her pain was not controlled by the treatment she received. Despite treatment, Ms. Sanchez continued to experience chronic ongoing pain –sometimes better, sometimes worse. She stated, "unfortunately I know my body, I'm in chronic pain, I have pain, I don't sleep..." AR83. She reported to Social Security that she had "chronic back pain, extreme fatigue, muscle spasm" and "when standing left side in upper leg numbness." AR 242. She reported that she moved a "a lot slower, when I stand for a long time left leg numbs. Sitting hurts, Stairs, one at a time, kneeling need help to get up." AR 247. The treatment notes, as set forth in Argument I, document and corroborate all the symptoms and limitations she reported. Moreover, additional acupuncture, the treatment that seemed to help the most, was not approved. *See*, Argument I above,

Third, Ms. Sanchez's pain and functional limitations were consistent with the opinions of her treating physicians, as well as the opinions of Drs. Champlin and Murphy that she was limited to essentially less than full time work at a sedentary level. AR 39. The ALJ, himself, accorded little weight to the opinions of the non examining State Agency reviewers. AR 40. The credible opinion evidence of record documented her work related functional limitations and chronic pain. In the main, the substantial evidence of record was consistent with Ms. Sanchez's statements regarding her pain and functional limitations.

Ms. Sanchez was 61 years old at the time of her hearing and had an excellent work record. Contrary to the ALJ's assertion, the substantial evidence established that Ms. Sanchez could not perform full-time sustained work at any exertional level. In short, the ALJ's articulated reasons for finding Ms. Sanchez less than credible were neither legitimate nor convincing.

3. <u>Decision</u>

Because the court has determined remand is appropriate to allow the ALJ to re-evaluate the medical opinion evidence, it is not necessary to resolve plaintiff's contentions related to the ALJ's adverse credibility assessment. However, the court observes the ALJ's reliance on cited activities of daily living is not well-placed because the ALJ has not explained how those activities undermine any specific testimony or indicate an ability to maintain sustained full-time employment. To this point, the court notes Drs. Murphy and Champlin both opined plaintiff is not capable of working more than six hours in a single day. This finding alone, which the court finds the ALJ improperly failed to address, undermines the current credibility finding's citation to activities of daily living. The ALJ's citation to inconsistency with the medical opinion evidence also fails to adequately support the adverse credibility finding in light of the errors identified above with respect to evaluation of such evidence.

///

///

18

On remand, the ALJ shall afford plaintiff a new credibility evaluation in light of the totality of the record, including any testimony provided at a new hearing.

### C. Consideration of Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

At Step 4, the ALJ also considered lay witness evidence in the form of a statement provided by plaintiff's daughter-in-law, Theresa Sanchez. See CAR 41. The ALJ rejected this lay witness evidence for the same reasons he rejected plaintiff's statements and testimony. See id. The ALJ expressly noted: "The lay witness claims are similar to the claimant's allegations." Id.

The ALJ's conclusion is sound, but only to the extent the ALJ's entire analysis and conclusions at Step 4 remain unchanged on remand. That is to say, and realizing this finding is dictum because it is not necessary to the conclusions reached in this opinion, pursuant to Valentine, 574 F.3d at 694, the court finds no error in the ALJ's approach to lay witness evidence in this case. On remand, should the ALJ's evaluation of the credibility of plaintiff's statements and testimony yield the same unfavorable result as in the current decision, there will be no need to further consider the lay witness evidence from plaintiff's daughter-in-law. If, however, the analysis of plaintiff's statements and testimony changes, the ALJ shall revisit plaintiff's daughter-

19

in-law's statement.

## IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;
2. Defendant's motion for summary judgment (ECF No. 27) is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: June 12, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE